IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

La'Shadion Shemwell,                                CIVIL ACTION 4:20-V-0043-SDJ
As Council Member, and
In his individual capacity
as a voter of District 1.

    Plaintiff,

-v-

City of McKinney, Texas

    Defendant.

---

**PLAINTIFF'S FIRST AMENDED PETITION AND INJUNCTIVE RELIEF**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

    COMES NOW, La'Shadion Shemwell, hereinafter "Plaintiff," in his personal capacity as the voter and as a Representative of District 1, McKinney Texas; and files this First Amended Petition and and Injunctive Relief and respectfully complains as follows:

### I. NATURE OF THE CASE

1. Plaintiff is an Honorable Councilmember representing District 1 of the City of McKinney, Texas, the citizens of the United States, and a resident of the State of Texas. He is also a registered voter of District 1, McKinney.

2. On January 21st, 2020, the McKinney City Council has set a date of May 3, 2020 for a "recall election" based on a petition to remove Plaintiff from his position on the City Council.

3. This "recall election" is to be held city-wide (or "at-large") and shall encompass the entirety of the City of McKinney, not just District 1, which elected Mr. Shemwell to his position in the city council.

4. When the McKinney charter was initially drafted there were no Districts, and all councilmember were elected at Large. Even though single member districts were later established.

5. Currently McKinney has seven council members, four are represent by single member districts, Mayor and two others are elected city-wide. Currently 6 white males, and one African-American male holds these offices. There are no women on this council.

6. Plaintiff wishes to have this honorable court determine the constitutionality of the Charter Amendment, which was put to public and passed in May of 2019, that allows this recall election to be held city-wide instead of just in District 1, the district Mr. Shemwell represents.

7. District 1, which Plaintiff represents, has the highest number of minorities in McKinney. Single member districts were designed to empower minority voters and to discourage vote dilution.

8. Mr. Shemwell also wishes the court to consider whether the charter change was motivated and aimed specifically for his removal, an act undermining the democratic process in general and minority rights in specific, in violation of in McKinney, Texas.

9. McKinney was required to, and did not, take into account the public policy and Voting Rights act protections of Districts, and should have taken into account the growing population of minorities in McKinney and specifically in District 1 of McKinney Texas.

10. The 2010 had already established District 1 as minority-majority district, and 2020 census will only further solidify this status.

## II.   PARTIES

11. Plaintiff, the Honorable La'Shadion Shemwell, is an individual and a duly elected member of the McKinney City Council and resides in Collin County, Texas. He petitions the court as a Council Member, as well as an individual voter in District 1 of McKinney, Texas.

12. Defendant, the City of McKinney, Texas ("City"), is a municipal corporation within the State of Texas. The City can be served by serving the City Secretary, at its principal place of business located at 222 North Tennessee Street, McKinney, Collin County, Texas 75069. The attorneys for the City of Attorney have indicated that they will accept service, due to the cooperation of the undersigned attorney in e-mailing the lawsuit and TRO to them.

## III.   JURISDICTION AND VENUE

13.     This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein This action is brought under Section 2 of the Voting Rights Act, 42 U.S.C. 1973 (and as amended in 1982).

14.     Venue is appropriate with this Court because the acts giving rise to this lawsuit occurred in this District in Collin County, Texas, and Defendant is subject to personal jurisdiction in Texas.

### IV.     DISCOVERY

15.     Pursuant to Texas Rule of Civil Procedure 190.3, Plaintiff intends for discovery in this case to be conducted under level 2.

### V.     RULE 26(a)(1) DISCLOSURE REQUESTED

16.     By this action, Plaintiff seeks non-monetary declaratory relief under the Texas Uniform Declaratory Judgments Act and a permanent injunction.

### VI.     DECLARATORY JUDGMENT

17.     Plaintiff incorporates herein by reference each and every allegation contained in each of the above paragraphs of this Petition as if fully set forth herein.

18. Plaintiff seeks a declaration, pursuant to the Uniform Declaratory Judgments Act, that the City of McKinney violated the Voting Rights Act of 1965 Section 2 by instituting a charter amendment that dilutes minority votes by extending and or maintaining the recall election of a single member district to a city wide recall instead of limiting it to District 1 only.

### VII.     STATEMENT OF FACTS & ARGUMENT

19.     Councilman Shemwell was duly and democratically elected by McKinney's District 1 to the City Council in 2017 for a term of four years. According to the current available U.S. Census Bureau, 77% of McKinney residents are white, 11% are black, 6% are Asian, and 18% are of Hispanic or Latino origin. District 1 has the highest amount of minorities in the city. As per De

In May of 2019, the city of McKinney formulated the following amendment language and placed it on the ballot to be voted on by the citizens of McKinney:

***Proposition F:*** *Shall Section 145 of the City Charter be amended to provide for a reduction in the required petition signatures needed to initiate a recall election?*

- *Proposed language: "Sec. 145. - Recall petitions*
  *The recall petition to be effective must be returned and filed with the City Secretary within forty-five (45) days after the filing of the affidavit required for initiative and referendum petitions, and it must be signed*

> *by qualified voters residing in any district, irrespective of the seat subject of the recall petition, of the City equal in number to at least thirty (30) percent of the total number of votes cast at the last regular municipal election; provided, however, that the petition shall contain the signatures of at least one thousand (1,000) of the qualified voters of the City and shall conform to the provisions of initiative and referendum petitions. No petition papers shall be accepted as part of petition unless it bears the signature of the City Secretary as required in initiative and referendum petitions."*

**Proposition G:** *Shall Section 146 of the City Charter be amended to clarify that recall elections are city wide?*

- *Proposed language: "Sec. 146. - Recall election*
  *The City Secretary shall at once examine the recall petition and, if the City Secretary finds it sufficient and in compliance with the provisions of this Chapter of the Charter, the City Secretary shall within five (5) days or at the next regular City Council meeting, whichever is later, submit it to the City Council with its office's certificate to that effect and notify the officer sought to be recalled of such action.*
  ***If the officer whose removal is sought does not resign within five (5) days after such notice, the City Council shall thereupon order and fix a date for holding a citywide recall election according to State***

Section 2 of the Voting Rights Act of 1965 prohibits voting practices or procedures that discriminate on the basis of race, color, or membership in one of the language minority groups identified in Section 4(f)(2) of the Act. Most of the cases arising under Section 2 since its enactment involved challenges to at-large election schemes, but the section's prohibition against discrimination in voting applies nationwide to any voting standard, practice, or procedure that results in the denial or abridgement of the right of any citizen to vote on account of race, color, or membership in a language minority group. Section 2 is permanent and has no expiration date as do certain other provisions of the Voting Rights Act.

In 1980, the Supreme Court held that the section, as originally enacted by Congress in 1964, was a restatement of the protections afforded by the 15th amendment. *Mobile v. Bolden*, 446 U.S. 55 (1980). Under that standard, a plaintiff had to prove that the standard, practice, or procedure was enacted or maintained, at least in part, by an invidious purpose.

In 1982, Congress extended certain provisions of the Act such as Section 5 that were set to expire, and added protections for voters who required assistance in voting. At the same time, it examined the history of litigation under Section 2 since 1965 and concluded that Section 2 should be amended to provide that a plaintiff could establish a violation of the section if the evidence established that, in the context of the "totality of the circumstance of the local electoral process," the standard, practice, or procedure being challenged had the result of denying a racial or language minority an equal opportunity to participate in the political process.

In its first review of a case brought under the 1982 amendment, the Supreme Court explained that the "essence of a Section 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). *See also, Johnson v. DeGrandy*, 512 U.S. 997 (1994).

The statute continues to prohibit state and local officials from adopting or maintaining voting laws or procedures that purposefully discriminate on the basis of race, color, or membership in a

language minority group. In a case alleging a violation of Section 2 because of a discriminatory intent, the plaintiffs must be prepared to prove, under the test established in *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp*, 429 U.S. 252, 264-68 (1977), that the challenged practice was adopted, at least in part, because it would harm minority voting strength, and not merely with an expectation that it would do so. *See, e.g., Personnel Adm'r of Massachusetts v. Fenney*, 442 U.S. 256, 279 (1979).

Only 11,400 ballots were cast in May 2017, while 94,000 other registered voters did not participate. Local elections generally have low voter turn out.

## VIII.   TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

20.     Plaintiff incorporates herein by reference each and every allegation contained in each of the above paragraphs of this Petition as if fully set forth herein.

21.     Plaintiff respectfully moves this Court to grant injunctive relief against Defendant, including but not limited to a temporary restraining order, a temporary injunction, and a permanent injunction restraining Defendant from enforcing the McKinney Charter as amended in 2019, under which the recall election being held May 5, 2020 is to be held city-wide, thus diluting the minority vote contrary to the spirit and letter of the Voting Rights Act 1965 Section 2.

22.     Plaintiff has a probable right to the relief they seek as   Defendant's actions are both facially unconstitutional and unconstitutional as applied to the recall election by diluting the minority vote in District 1 of McKinney, Texas.

23.     Dilution of voters' rights in any given election is an irreversible and immediate injury for which there is no adequate remedy at law.

24.     Plaintiff is currently being forced to mount a city-wide campaign against the recall election to defend his position on the council, as well as trying to keep the voters of his district from having their votes diluted due to Defendant's demonstrated willingness to enforce the unconstitutional charter as amended in 2019.

 *"It is well established that the loss of First Amendment freedoms [which includes voting rights], for even minimal periods of time [implying for even one election], unquestionably constitutes irreparable injury." Hohe v Casey, 868 F.2d 69 at 72, 73 (3d Cir. 1989).* Accordingly, Plaintiff will suffer irreparable injury if' this Court does not issue temporary injunctive relief.

25.     An ex parte hearing of this application for a temporary restraining order is necessary because of the imminent threat that Defendant is attempting to enforce the City of McKinney's amended recall provision  at the City Council meeting on  January 21, 2020

## IX. ATTORNEY'S FEES

26. Plaintiff seeks the full amount of their reasonable and necessary attorney's fees incurred in prosecuting this suit and on any appeal of this suit.

## XII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that, upon final hearing, the Court:
    A. Issue a final restraining order Defendant from enforcing the McKinney Recall Charter as amended;
    B. Issue declaratory relief declaring McKinney City Charter Amendment to be facially unconstitutional;
    C. Issue declaratory relief declaring McKinney City Ordinance (which one) to be unconstitutional as applied to Plaintiff and District 1;
    D. Issue permanent injunctive relief enjoining Defendant from enforcing Recall Charter as amended;
    E. Award Plaintiff their costs and reasonable and necessary attorney's fees incurred in propounding this suit; and
    F. In the alternative court could limit the recall election to just the voters of district 1, therefore allowing only District 1 votes cast in May 3, 2020 recall election to be counted to determine the final outcome.
    F. Award Plaintiff such other and further relief to which Plaintiff may be justly entitled, to which the Court deems fair and proper.

Dated:  March 1, 2020

                                  Respectfully submitted,

                                  /s/ Shayan Elahi

                                  **Shayan Elahi**
                                  State Bar No. 24080485
                                  Shayan@elahilawfirm.com
                                  13601 Preston Road Ste.770
                                  Dallas, Texas 75240

## CERTIFICATE OF SERVICE

I hereby certify that on this March 1, 2020, I electronically filed the foregoing Joint Rule 26(f) Attorney Conference Report with the Clerk of the Court for the Eastern District of Texas, Plano Division, using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court.